UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| YOLANDA LEE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09 CV 19 |
| | ) | |
| P.O. ANTWON JONES, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court on defendant Antwon Jones motion for summary judgment. (DE #36.) Plaintiff Yolanda Lee brings this action pursuant to 42 U.S.C. § 1983 alleging that her rights under the Fourth Amendment to the United States Constitution were violated when Jones used excessive force to effect her arrest.[1] For the reasons set forth below, the motion is to be denied.

*Background*

Unless otherwise noted, the following facts are not genuinely disputed. At approximately 9:00 a.m. on April 1, 2008, plaintiff Lee's daughter, E-Toi, called Lee from school. (DE #41-2 at 13.[2]) E-Toi said that she had been suspended and wanted her mother to come pick her up. (*Id.* at 13-14.) Lee, accompanied by her son Erik (who was

---

[1] In her complaint Lee also alleged that probable cause for the arrest did not exist. In her response to the summary judgment motion she concedes that her claim is limited to one that Jones used excessive force. (DE #41 at 1 n.1.)

[2] In this order references to pages use the page number assigned by the CM/ECF system, not the document's own internal page number, except where otherwise indicated.

about 8 years old at the time[3]), got her friend and neighbor Christol Thompson to give them a ride. (*Id* at 14.)

After arriving at the school Lee was invited to the office of Assistant Principal Krystin Carlson to discuss the reason for E-Toi's suspension. (*Id*. at 15.) School Principal Derrick White was also present. (*Id*. at 16.) At some point during the meeting, Principal White left and returned with defendant Jones. (*Id*.) Jones is a City of South Bend police officer who was at the school as a community resources officer.[4] White said to Jones: "I need you to come into this meeting. We have an irate parent in here." (DE # 37-5, deposition p. 21.)

White and Jones returned to the meeting, and Lee announced that she was leaving. (DE #41-2 at 17.) As she (along with E-Toi, Erik and Thompson) left the building, Jones followed her out. (*Id.* at 19.) In his view, he was escorting her to be sure she left the building and the school grounds. (DE #37-5, deposition pp. 27-36.) Shortly thereafter, before Lee left the grounds, Jones arrested her and she was charged with disorderly conduct, criminal trespass, and resisting arrest. (DE #37-2 at 2.) Lee

---

[3] At the time of Lee's deposition in September 2009, she said that Erik was 9 years old. (DE #41-2 at 11.)

[4] Paragraph 4 of the amended complaint alleges that Jones was at all times a duly appointed police officer of the City of South Bend. Jones' somewhat ridiculous answer to that paragraph is that he is "without sufficient information to admit or deny." (DE #17 at 2.) The basis for Jones' motion for summary judgment is not only that he properly arrested Lee without using excessive force, but also that he had qualified immunity for doing so, both of which assume that he is a police officer. Because neither party disputes that Jones was an officer the court will make that assumption, but as the record stands there is nothing which actually establishes that fact, and summary judgment could be denied on the basis that a question of fact exists whether Jones was a private citizen who committed a battery.

ultimately pleaded guilty to, and was convicted of, disorderly conduct, a misdemeanor. (DE #37-1 at 2.)

The circumstances leading up to Lee's arrest are disputed. According to Lee, she remained calm at all times. (DE # 41-2 at 18.) As Jones followed her out of the building, he was yelling, screaming and swearing at her, telling her she needed to "get the fuck out now." (*Id*. at 18-19.) She thought he was only a security guard and did not know he was a police officer, and as she exited the building she used her cell phone to call 9-1-1. (*Id*.) When they got in front of the school Erik told Jones to stop talking to his mother "like that," and Jones responded "shut the fuck up." (*Id*. at 21.) Lee told Jones not to speak to her son like that because he has a mental disability, and Jones responded, "I don't give a fuck." (*Id*.) He told Lee to leave or he would charge her for trespassing. (*Id*.)

Lee began stepping off the curb into the school's parking lot; she was limping because she had two broken toes and was wearing an "air walk boot." (*Id*.) She stood still because she was afraid of losing her balance and falling. (*Id. at 22.*) She admits that at about this time she called Jones a "fat fucker." (*Id*.) Jones said that if she didn't move he would arrest her, and that was when she first realized he was a police officer. (*Id*.) She began to walk again, holding onto a car because she thought she was going to fall. (*Id*.) She heard her daughter, her son, and Thompson calling her name, and in Lee's words:

> [B]efore I could even turn around he had my right hand in a handcuff, and he pushed my arm so hard behind my back that I heard something break.

> And we rolled together on the car, and we ended up—my back was against the car and his elbow was against my throat.

(*Id.*)

A police car arrived (apparently due to Lee's 9-1-1 call) and Lee got into it, complaining to Jones that the handcuffs were too tight. (*Id.* at 28). He told her that they were fine. (*Id.*) After posting bond and being released, it is undisputed that later that day Lee went to the hospital emergency room complaining of pain in her wrist. (*Id.* at 31.) Sixth months later, after constant pain in her shoulder, Lee was diagnosed as having a previously-broken collar bone, which she believes occurred when she heard the snap when Jones forced her arm behind her. (*Id.* at 33.)

School Principal White's and defendant Jones' descriptions of what occurred are consistent with each other, but markedly different than Lee's. According to White, Lee was using profanity in the meeting, and that as soon as he returned with Jones, she said that the school personnel "were all motherfuckers" and that she didn't need "this bullshit." (DE #37-4 at 2.) White told her that if she didn't stop using such language, he would have her removed from the premises. (*Id.*) She continued in that vein, and White said "this meeting is over." (*Id.* at 2-3.) She continued using profanities as she walked out, escorted by Jones. (*Id.* at 3.)

According to Jones, he followed Lee out of the meeting as she kept using profanities and he told her "Ma'am, you need to leave before you end up going to jail." (DE #37-5, deposition p. 27.) All the way out, as Jones kept telling her she needed to

leave, she kept stopping to curse at him. (*Id.*, deposition pp. 28-32.) Jones does not recall if he felt physically threatened. (*Id.*, deposition p. 34.) After they were outside the school he told her that if she stopped again she was going to jail. (*Id.*) For that events occurring after that, defendant Jones relies solely on Lee's deposition testimony, accepting her version of the arrest for the purposes of his summary judgment arguments.[5]

Thus, to summarize, Jones' version of the events is that Lee was being hostile, verbally abusive, and not leaving the school grounds as quickly as he believed his orders warranted. Lee's version, which the court must credit on summary judgment, is that she was calm and Jones was the one being hostile and verbally abusive. She was leaving as quickly as she could given her broken toes, and Jones, using a degree of force not necessary in the circumstances, twisted her arm so hard that she heard something snap, and laid on top of her on a car with his elbow against her throat. He handcuffed her so tightly that she sought medical treatment later that day for the pain caused in her

*Legal Standard*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a

---

[5] In Jones' memorandum in support, he argues that Erik attacked him as he attempted to place Lee in handcuffs. (DE #37 at 2.) In the portion of Lee's deposition testimony he cites, she states that Erik–an 8 year-old child—threw something at Jones while Lee was standing talking to 9-1-1 on the phone, and then was screaming "let my mom go" while Jones was placing Lee in handcuffs. (DE #41-2 at 28.)

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an issue of fact on an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

*Analysis*

Every person has the right not to be subjected to unreasonable or excessive force while being arrested or detained by a police officer. *Graham v. Connor,* 490 U.S. 386, 394 (1989). On the other hand, in making an arrest an officer has the right to use some degree of physical coercion or threat to effect the arrest. *Id.* at 396. Whether the force used is excessive depends on the totality of circumstances under an objective

reasonableness standard. *Marion v. City of Corydon, Ind.,* 559 F.3d 700, 705 (7th Cir. 2009). Courts should consider all of the circumstances, such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect actively resists arrest or attempts to evade arrest by flight. *Graham,* 490 U.S. at 396. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 387.

Defendant Jones argues that he is entitled to summary judgment based on the undisputed facts outlined above for four reasons: 1) Lee's having pleaded guilty to disorderly conduct collaterally estops her from asserting an excessive force claim; 2) Lee has no evidence that Jones used excessive force; 3) Lee has no evidence that Jones' conduct proximately caused her any physical injury; and 4) Jones is entitled to qualified immunity. None of these arguments merits a lengthy discussion.

First, Jones hasn't cited a single case stating that Lee's guilty plea to a misdemeanor disorderly conduct charge estops her from asserting an excessive force claim, because there are none. Jones has not shown the court what facts Lee admitted in pleading guilty, but her plea could have been on any conduct which would violate the statute, including making unreasonable noise and refusing to stop after being asked to do so. Ind. Code § 35-45-1-3(a)(2). Admitting that she engaged in that conduct would not act as a collateral estoppel by showing that the degree of force used by Jones to

7

effect Lee's arrest was objectively reasonable. *Cf. Ellis v. Wynalda*, 999 F.2d 243, 245 n.1 (7th Cir. 1993).

Second, Jones argues that Lee has no evidence that the degree of force used was unreasonable. The facts leading up to Lee's arrest, in the light most favorable to her, show her remaining calm (although using profanity at least once), and Jones being the one using profanity multiple times and acting in a hostile and threatening manner. The facts surrounding the arrest itself stand uncontradicted, and involve Jones unexpectedly twisting Lee's arm roughly behind her back, laying on top of her on a car with his elbow against her throat and then handcuffing her so tightly that it caused enough pain for her to seek medical treatment later that day. Roughly handcuffing a person who is not offering any resistance can itself be enough to make out an excessive force claim. *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003). Even without taking the facts in the light most favorable to Lee, the undisputed facts surrounding her arrest are enough to create an issue of fact for the jury as to whether the force Jones used was excessive.

Third, Jones argues that Lee has no evidence, other than self-reporting, showing "to a reasonable medical certainty" that she has injuries proximately caused by Jones' actions. (DE #37 at 7.) Although the court is inclined to agree that on the present record she lacks any evidence showing Jones proximately caused a severe or permanent injury, her pain caused by the overly-tight handcuffs, though self-reported, is itself evidence of an injury. More importantly, an excessive force claim does not require proof of injury. *Meyer v. Robinson*, 992 F.2d 734, 739 (7th Cir. 1993).

Finally, Jones argues that he is entitled to qualified immunity for his actions. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). According to Lee's version of events, she was neither resisting Jones nor doing anything to justify the degree of force he used. Under the law as it existed for quite some time when the events here took place, Lee's "right to be free from the excessive force . . . was 'sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right.'" *Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007) (quoting *Miller v. Jones*, 444 F.3d 929, 934 (7th Cir. 2006)). "When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). Therefore, Jones has not shown that he is entitled to qualified immunity.

*Conclusion*

For the reasons above, Jones' motion for summary judgment (DE #36) is **DENIED**. The parties' attorneys are directed to confer regarding possible trial dates, then contact the undersigned's courtroom deputy for scheduling.

**SO ORDERED.**

Date: April 7, 2014

    s/ James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT